**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **RAYQUON COLEMAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DR. MONTGOMERY,**<br><br>**Defendant.** | **Case No. 26-cv-992-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Rayquon Coleman, an inmate of the Illinois Department of Corrections who is currently incarcerated at Big Muddy River Correctional Center ("Big Muddy") brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is currently before the Court on Coleman's motion for temporary restraining order and/or preliminary injunction (Doc. 2).[1] Warden Kimberly Hvarre has filed a response (Doc. 12) in opposition to the motion.

## BACKGROUND

On July 23, 2026, Coleman filed his Complaint alleging deliberate indifference in the treatment of a cataract in his right eye (Doc. 1). Specifically, he alleged that upon transferring to Big Muddy in February 2025, he informed the nurse at intake about his cataract and saw the eye doctor, Dr. Montgomery, who confirmed the diagnosis (Doc. 7,

[1] To the extent Coleman sought a temporary restraining order, the Court previously denied the request noting that Coleman had not demonstrated that he faced immediate and irreparable injury (Doc. 4). His request for a preliminary injunction remains pending.

p. 2). Dr. Montgomery indicated that Coleman would be placed on the waitlist for surgery, but despite months of waiting, he was not scheduled for surgery (*Id.*). Coleman alleged that his vision began to deteriorate and he developed pain in his eye (*Id.*). In August 2025, he felt something moving in his eye and his vision deteriorated further (*Id.*). Despite submitting several requests to be seen by the eye doctor, Coleman did not receive another appointment with Dr. Montgomery until April 2026 (*Id.*). At that appointment, Dr. Montgomery acknowledged that he received Coleman's requests but noted that Coleman was already on the waitlist for surgery. After an examination, Dr. Montgomery also acknowledged that Coleman's cataract was moving (*Id.*). He offered drops for Coleman's eye but failed to prescribe any pain medications.

After a review of Coleman's allegations pursuant to 28 U.S.C. § 1915A, Coleman was allowed to proceed against Dr. Montgomery on an Eighth Amendment deliberate indifference claim (Count 1) and an Illinois state law claim for medical malpractice (Count 2) for the delays and denials of care Coleman experienced (Doc. 7, p. 3).

Along with his Complaint, Coleman filed a motion for temporary restraining order and/or preliminary injunction (Doc. 2) seeking immediate surgery for his cataract. In light of the seriousness of the allegations, the Court added the current warden of Big Muddy, Kimberly Hvarre (official capacity only), as a defendant to respond to Coleman's motion and to implement any injunctive relief awarded (Doc. 7, pp. 4-5). The Court directed Hvarre to respond to Coleman's motion within 14 days of service (*Id.* at p. 6).

On September 4, 2026, Kimberly Hvarre filed a response in opposition to Coleman's motion (Doc. 12). She also submitted updated medical records for the Court's

review. During Coleman's reception screening upon arrival at Big Muddy on February 24, 2025, the nurse noted that Coleman reported a cataract in his right eye (Doc. 12-1, pp. 3-4). He was referred to the optometrist (*Id.* at p. 4). On April 19, 2025, Coleman had an optometric examination, and the doctor confirmed the presence of a cataract (*Id.* at p. 37). The doctor noted that he would request an ophthalmology consult (*Id.*). Ten days later, on April 29, 2025, the ophthalmology evaluation was approved (*Id.* at p. 33).

On December 20, 2025, Coleman was seen in the healthcare unit after submitting a request for pain in his eye (Doc. 12-1, pp. 22-23). At the appointment, Coleman noted that he could no longer see out of his right eye (*Id.* at p. 22). A request for an eye doctor appointment was submitted, and Coleman was directed to use artificial tears for his itchy, watery eyes (*Id.*). On April 18, 2026, Coleman again saw the eye doctor for an examination (*Id.* at p. 40). The records note that there was a total cataract and the lens was now subluxated (*i.e.* displaced) (*Id.*). Again, an ophthalmology consult was requested (*Id.*). The eye doctor again submitted a referral; the request for a consult was marked as needed "ASAP." (*Id.* at p. 34). On May 20, 2026, the eye doctor noted that Coleman was scheduled for an appointment on July 31, 2026 (*Id.* at p. 41).

On July 17, 2026, Coleman submitted another request for care, noting that his eye pain was now 9 out of 10 (Doc. 12-1, p. 29). On July 22, 2026, he was seen in the healthcare unit and noted that he could feel his cataract moving (*Id.* at p. 28). He was prescribed acetaminophen and ibuprofen (*Id.*). On July 30, 2026, Coleman was sent to the Marion Eye Center for an examination by Dr. Faisel Ahmad (*Id.* at pp. 35-36). He was diagnosed with a subluxated crystalline lens in the right eye with a posterior dislocation of the lens

(*Id*. at p. 36). He was referred to Dr. Guiseppi at the Marion Eye Center (*Id*.). Dr. Ahmad marked his condition as "serious." (*Id*.). On August 4, 2026, Coleman was seen in the healthcare unit (*Id*. at p. 32). The notes indicate that Coleman was being seen upon return from an appointment at the Marion Eye Center (*Id*.). He was to be placed on Dr. Montgomery's next medical line (*Id*.). On August 5, 2026, an offender optometric examination form from Big Muddy notes that Coleman was seen by Marion Eye Center and a consultation follow-up with Dr. Guisseppe was recommended (*Id*. at p. 42). No date for the appointment with Dr. Guiseppi is noted in the record, although counsel for Hvarre indicates that Coleman has been scheduled for another appointment at Marion Eye Clinic within the next 60 days (Doc. 12, p. 4).

## LEGAL STANDARDS

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (2d ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; and (3) irreparable harm absent the injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning."

*AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## DISCUSSION

Coleman fails to establish that he is entitled to a preliminary injunction at this time. Coleman's motion requested a Court Order directing defendants to schedule and take Coleman for surgery for his cataract (Doc. 2, p. 2). But the medical records indicate that Coleman has not been recommended for surgery. He has now seen an eye doctor at Marion Eye Center and that doctor has recommended that Coleman be seen by another doctor for his posterior dislocation of the lens in his right eye (Doc. 12-1, p. 36). There is currently no recommendation for surgery by the treating physician at Marion Eye Center. Further, it appears that Coleman has received care from a specialist and is scheduled for

a follow-up appointment with another specialist. Thus, Coleman fails to demonstrate a likelihood of success on the merits of his claim for immediate surgery.

The Court notes, however, that there appears to have been some delay in Coleman's care. He was recommended for a referral for an outside evaluation in April 2025 and only recently had an examination at Marion Eye Center. There is no indication in the record as to the cause of that delay. Further, Hvarre alleges that Coleman is currently scheduled for further evaluations but fails to provide any specifics regarding those scheduled appointments. Hvarre's response indicates that Coleman is scheduled for another appointment at Marion Eye Center although counsel for Hvarre was unable to specify the date of that appointment or whether the appointment was with Dr. Guiseppi. The response also indicates that an August 4, 2026 note in the medical records indicated that Coleman would be scheduled for a visit with Dr. Mongomery, but it is not clear from the records whether Coleman was actually scheduled for the appointment or seen by any other provider. Although Coleman has not demonstrated that he is entitled to the injunctive relief he seeks, the Court finds the lack of information regarding Coleman's current care concerning. As such, the Court **ORDERS** Defendant Hvarre to provide an update to the Court regarding Coleman's current treatment plan. The updated notice should indicate whether or not Coleman has been seen by medical providers at the prison. The notice should also indicate the scheduled date for the follow-up appointment at Marion Eye Center. The updated notice is due by **October 6, 2026**.

## CONCLUSION

For the reasons set forth above, Coleman's motion for preliminary injunction (Doc. 2) is **DENIED**. Defendant Hvarre is **DIRECTED** to file by **October 6, 2026,** an updated notice regarding Coleman's medical care for the cataract in his right eye.

**IT IS SO ORDERED.**

**DATED: September 16, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**